**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **KAREN EVANCHO,** | : | |
| | : | |
| **Plaintiff** | : | **CIVIL ACTION NO. 1:05-CV-0117** |
| | : | |
| **v.** | : | **(Judge Kane)** |
| | : | |
| **DAVID KWAIT; ROBERT VONSCIO;** | : | |
| **JAMES CAGGIANO; LETTY KRESS;** | : | |
| **LEWIS GENTILE; MARK SERGE;** | : | |
| **and THOMAS MAIOLI,** | : | |
| | : | |
| **Defendants** | : | |

**MEMORANDUM AND ORDER**

Before the Court is Defendants' motion to dismiss Plaintiff's complaint. (Doc. No. 6.) The motion has been fully briefed and is ripe for disposition. For the reasons that follow, the motion will be granted, and Plaintiff will be granted leave to amend.

## I. BACKGROUND

Plaintiff initiated this civil action by a complaint filed January 17, 2005. (Doc. No. 1.) In the complaint, Plaintiff names as Defendants the following employees and former employees of the Office of Attorney General for the Commonwealth of Pennsylvania ("OAG"): Deputy Attorney General David Kwait; Robert Vonscio, Plaintiff's former immediate supervisor; Eastern Zone Commander James Caggiano; Attorney Letty Kress; Western Zone Commander Lewis Gentile; Deputy Attorney General Mark Serge; and Thomas Maioli, Plaintiff's former supervisor. The following facts are taken from Plaintiffs complaint and are accepted as true for purposes of the instant motion. See Fed. R. Civ. P. 12(b)(6); United States Express Lines Ltd. v. Higgins, 281 F.3d 383, 388 (3d Cir. 2002).

Plaintiff was employed as a Bureau of Narcotics Investigation and Drug Control Officer and as a supervisor for the OAG from approximately 1984 until 1997. (Doc. No. 1 at ¶ 15.) In 1997, Plaintiff was transferred to the position of custodian for the regional evidence room located in Greensburg, Pennsylvania. (Id. at ¶ 16.) Plaintiff discovered that money and drugs had been stolen from the evidence room, and the thefts appeared to be inside jobs. (Id. at ¶ 17.) Plaintiff claims that she requested assistance from Defendants Gentile and Vonscio but they refused to respond to Plaintiff's request for an internal investigation. (Id. at ¶ 19.) Plaintiff was later relieved of her position as custodian of the evidence room. (Id. at ¶ 21.)

Following Plaintiff's removal as custodian, an internal investigation was conducted. Plaintiff claims she cooperated fully with the investigation, which allegedly lead to the forced retirement of a number of OAG officials, including Defendants Gentile and Vonscio. (Id. at ¶ ¶ 23-24.) Plaintiff alleges that shortly thereafter she "became the object of ridicule and demeaning mistreatment by her colleagues and this mistreatment was . . . encouraged and allowed by her superiors." (Id. at ¶ 25.) Plaintiff further alleges that she was nicknamed the "office rat" and that the captioned Defendants engaged in a retaliatory effort to ostracize and punish Plaintiff for speaking out. (Id. at ¶¶ 25-26.)

Plaintiff was subsequently transferred to the position of supervising agent of the Financial Investigation Unit where she was responsible for two agents. Plaintiff claims that this transfer was against her will, and "was carried out by the Defendants Kwait and Caggiano as a way to retaliate against her for speaking out." (Id. at ¶ 28.) Plaintiff claims that following her transfer, she was subject to "persistent harassment carried out by [D]efendants Serge and Maioli at the behest of their superiors including [D]efendants Caggiano and Kwait." (Id. at ¶ 30.)

Plaintiff claims that she became emotionally and mentally ill as a result of the alleged harassment and on September 17, 2000, Plaintiff went on medical leave. (Id. at ¶ 35.) Plaintiff alleges that at some unspecified time Defendant Kress made it clear that Plaintiff would be subject to additional harassment and retaliation if she returned to work. (Id. at ¶ 36.) Plaintiff claims she was forced to end her employment with OAG on January 17, 2003, after exhausting her medical leave. (Id. at ¶ 38.)

Exactly two years later, on January 17, 2005, Plaintiff filed her complaint in which she asserts the following claims: violation of her First Amendment right to speak out on matters of public concern free of unlawful retaliation; intentional infliction of emotional distress; and constructive discharge under Pennsylvania state law. (Doc. No. 1.) Defendants have moved to dismiss the claims against them for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. No. 6.)

## II. STANDARD OF REVIEW

A motion to dismiss tests the legal sufficiency of the complaint. Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993). When considering a motion to dismiss, the court accepts as true all factual allegations contained in the complaint and views them in the light most favorable to the plaintiff. United States Express Lines Ltd. v. Higgins, 281 F.3d 383, 388 (3d Cir. 2002). The plaintiff is required to "set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that those elements exist." Kost, 1 F.3d at 183 (citations omitted). A court should grant a motion to dismiss only if it appears the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. Wisniewski v. Johns-Manville Corp., 759 F.2d 271, 273 (3d Cir. 1985) (citations omitted).

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is properly granted when, taking all factual allegations and inferences as true, the moving party is entitled to judgment as a matter of law. Markowitz v. Northeast Land Co., 906 F.2d 100, 103 (3d Cir. 1990). The burden is on the moving party to show that no claim has been stated. Johnsrud v. Carter, 620 F.2d 29, 33 (3d Cir. 1980). "A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). However, "a court need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906, 908 (3d Cir. 1997). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Lake v. Arnold, 112 F.3d 682, 688 (3d Cir. 1997) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Harlow v. Fitzgerald, 457 U.S. 800 (1982)).

## III. DISCUSSION

In support of their motion to dismiss, Defendants assert the following arguments: (a) all of Plaintiff's claims are time-barred; and (b) Plaintiff has failed to state claims of retaliation for protected speech, intentional infliction of emotional distress, and wrongful discharge.[1] (Doc. No. 7.)

### A. Statute of Limitations

[1] Defendants also assert that they are entitled to Eleventh Amendment immunity from any claims brought against them in their official capacities and sovereign immunity from any state law tort claims. Although the Court notes that the complaint is devoid of any allegation of conduct by any defendant, either in their official or individual capacities, on or after January 17, 2003, the Court does not reach Defendants' arguments as the relevant claims will be dismissed as discussed below.

In Pennsylvania, civil rights claims brought under 42 U.S.C. § 1983 are subject to the Commonwealth's two-year statute of limitations governing personal injury actions. See Wilson v. Garcia, 471 U.S. 261, 279 (1985) (holding that state statutes of limitations governing personal injuries are applicable to causes of action under 42 U.S.C. § 1983); Reitz v. County of Bucks, 125 F.3d 139, 143 (3d Cir. 1997); 42 Pa. Cons. Stat. Ann. § 5524 (two year statute of limitation on personal injury actions and proceedings). A claim brought pursuant to 42 U.S.C. § 1983 accrues when the plaintiff knows, or has reason to know, of the injury that constitutes the basis of the action. Smith v. Holtz, 856 F. Supp. 227, 231 (M.D. Pa. 1994) (citing Deary v. Three Un-Named Police Officers, 746 F.2d 185, 197 (3d Cir. 1984) and Sandutch v. Muroski, 684 F.2d 252, 254 (3d Cir. 1982)).

Plaintiff filed her complaint alleging personal injury on January 17, 2005. Accordingly, in order for her claims to be timely, the injury that constitutes the basis of the action must have occurred on or after January 17, 2003. Therefore, the only allegations that the Court will consider are those that occurred on or after January 17, 2003.

The only allegation Plaintiff makes in her complaint that arguably falls within the statute of limitations is her claim that she was constructively discharged on January 17, 2003, in retaliation for speaking out about and cooperating in the investigations of evidence room theft. The limitations period on a claim of constructive discharge does not accrue until the loss of employment occurs. Armington v. Sch. Dist. of Philadelphia, 767 F. Supp. 661, 665 (E.D. Pa. 1991) (citing Centifanti v. Nix, 865 F.2d 1422, 1433 (3d Cir. 1989)). The Court finds that, when taken in a light most favorable to Plaintiff, constructive discharge could support Plaintiff's claim of retaliation for engaging in protected speech under 42 U.S.C. § 1983 and her claim of constructive discharge under Pennsylvania state law.

Accordingly, the Court finds that Plaintiff's section 1983 and constructive discharge claims cannot be dismissed on the basis that they are time-barred.

### B. Sufficiency of Plaintiff's Claims

Defendants further argue that these claims should be dismissed because Plaintiff has failed to allege facts sufficient to support the claims. The Court will consider each claim in turn.

#### 1. Retaliation for Engaging in Protected Speech

To prevail in a 42 U.S.C. § 1983 suit for retaliation under the First Amendment, a plaintiff must show the following: (1) she was engaged in a protected activity; (2) the government responded with retaliation; and (3) the protected activity was the cause of the retaliation. Estate of Smith v. Marasco, 318 F.3d 497, 512 (3d Cir. 2003). Plaintiff alleges that Defendants acted under color of law to violate Plaintiff's right to freedom of speech under the First Amendment. Plaintiff appears to contend that Defendants retaliated against her by forcing her to retire because she spoke out about and cooperated in the investigations of evidence room theft. Defendants argue that Plaintiff has failed to state a claim upon which relief can be granted.

In order to state a claim of retaliation for engaging in protected speech, a plaintiff must first establish that the activity in question is protected under the First Amendment. San Filippo v. Bongiovanni, 30 F.3d 424, 434 (3d Cir. 1994). "A public employee has a constitutional right to speak on matters of public concern without fear of retaliation." Baldassare v. New Jersey, 250 F.3d 188, 194 (3d Cir. 2001). Speech about the way government is serving the public or discharging its responsibilities is of public concern. See O'Donnell v. Yanchulis, 875 F.2d 1059, 1062 (3d Cir. 1989) (holding that speech alleging corrupt practices by government officials was of the utmost public

concern); Czurlanis v. Albanese, 721 F.2d 98, 100 (3d Cir. 1983) (holding that speech critical of the Division of Motor Vehicles was of public concern because the comments were motivated by a desire to spotlight potential governmental wrongdoing).

In this case, Plaintiff alleges that she spoke out about and cooperated in the investigations of thefts in the evidence room. The Court finds that, if proven as alleged, Plaintiff's speech and cooperation with the internal investigation would be manifestly of "public concern," and therefore would constitute a protected activity. O'Donnell, 875 F.2d at 1062. Furthermore, Plaintiff has alleged she was constructively discharged in retaliation for her cooperation with the investigation. If proven, such conduct on the part of Defendants may constitute an adverse employment action motivated by Plaintiff's participation in the investigation.

Although Plaintiff has generally alleged that she was subjected to retaliation for engaging in protected speech, it is fundamental under section 1983 jurisprudence that in order to be held liable, an individual defendant must have had personal involvement in the acts alleged. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d. Cir. 1988). Defendants argue that the complaint fails to allege personal involvement by any Defendant in Plaintiff's alleged constructive discharge and as a result, the section 1983 claim should be dismissed.

Plaintiff requests damages from all Defendants; however, her claim lacks specific allegations against any of the individual Defendants of personal involvement in the alleged tort of constructive discharge. Although Plaintiff claims she wanted to return to work and that the OAG refused to accommodate her return, Plaintiff has failed to allege any conduct on the part of any individual

Defendant on or after January 17, 2003, having any relationship to her alleged constructive discharge.[2] Therefore, Defendants motion to dismiss on this basis will be granted with respect to this claim. However, the Court will grant Plaintiff leave to amend her complaint to provide greater specificity regarding her claim of retaliation for engaging in protected speech in accordance with Rule 8(a)(2) of the Federal Rules of Civil Procedure.

**2. Intentional Infliction of Emotional Distress**

In her complaint, Plaintiff asserts that Defendants caused her to suffer intentional infliction of emotional distress and, as a result, was forced to take medical leave on September 17, 2000. (Doc. No. 1 at ¶ 14.) An action for intentional infliction of emotional distress requires a plaintiff to establish four elements: (1) extreme and outrageous conduct; (2) the conduct must be intentional or reckless; (3) it must cause emotional distress; and (4) the distress must be severe. Bruffett v. Warner Communications, Inc., 692 F.2d 910, 914 (3d Cir. 1982) (citing Chuy v. Philadelphia Eagles Football Club, 595 F.2d 1265, 1273 (3d Cir. 1979) (en banc)). As discussed above, the statute of limitations precludes the Court from considering any allegations that occurred prior to January 17, 2003. A thorough review of the complaint reveals that Plaintiff has failed to allege any specific conduct –outrageous or otherwise– on the part of Defendants on or after January 17, 2003. Therefore, Plaintiff's claim for intentional infliction of emotional distress must be dismissed because the claim is time-barred.

---

[2] Although Plaintiff claims participation by individual Defendants in the alleged harassment and transfer, this alleged conduct is claimed to have occurred prior to September, 2000. Any alleged torts relating to this conduct and time are now barred by the statute of limitations. As discussed above, the Court will only consider conduct that is alleged to have occurred on or after January 17, 2003.

**3. Constructive Discharge**

In her complaint, Plaintiff asserts that "she suffered a wrongful discharge, in the form of a constructive discharge."[3] (Doc. No. 1 at ¶ 14.) To establish a claim for constructive discharge, a plaintiff must demonstrate that the employer permitted conditions so intolerable that a reasonable person would have felt compelled to resign. Duffy v. Paper Magic Group, Inc., 265 F.3d 163, 167 (3d Cir. 2001); see also Berger v. Edgewater Steel Co., 911 F.2d 911, 922-23 (3d Cir. 1990) ("a court must find that an employer knowingly permitted conditions . . . so intolerable that a reasonable person subject to them would resign"). Thus, a plaintiff must allege that the employment situation reached a "threshold of intolerable conditions." Id. at 169. Factors commonly cited by employees who claim to have been constructively discharged include: (1) a threat of discharge; (2) an urge or suggestion that the employee resign or retire; (3) a demotion; (4) a reduction in pay or benefits; (5) an involuntary transfer to a less desirable position; (6) an alteration of job responsibilities; and (7) the receipt of unsatisfactory job evaluations. Clowes v. Allegheny Valley Hosp., 991 F.2d 1159, 1161 (3d Cir. 1993).

Plaintiff alleges that she was transferred by Defendants Kwait and Caggiano against her will to the position of supervisor of the Financial Investigative Unit. Plaintiff further alleges that during this time she was subject to persistent harassment by Defendants Serge and Maioli "at the behest of their superiors including [D]efendants Caggiano and Kwait." (Doc. No. 1 at ¶ 30.) However, these events

[3] Although it is unclear from the complaint whether Plaintiff is alleging a claim of wrongful discharge or constructive discharge, the Court notes that Plaintiff addresses this claim as "a cause of action for constructive discharge" in her response brief. (Doc. No. 10 at 12.) Therefore, the Court will construe Plaintiff's complaint as a claim for constructive discharge.

are all alleged to have occurred prior to January 17, 2003. Starting September 17, 2000, and continuing until her resignation, Plaintiff had been on medical leave and had not attended a day of work in nearly three years when she submitted her resignation. Although it may be theoretically possible for a plaintiff to claim constructive discharge based on acts occurring almost entirely outside the workplace, Plaintiff has not sufficiently alleged the existence of "intolerable conditions" since the time she went on medical leave, September 17, 2000, such that a "reasonable person would have felt compelled to resign." Duffy, 265 F.3d at 169.

The apparent precipitating act to Plaintiff's constructive discharge was the "refusal of the Attorney General's office [OAG] to accommodate her so that she could return to work, making it clear that she was unwanted." (Doc. No. 1 at ¶ 38.) The only allegation suggesting that her working conditions would be affected if she returned is Plaintiff's claim that Defendant Kress made it clear "that she would be subject to more intimidation should she return from her medical leave." (Id. at ¶ 36.) Although the manner and timing of Defendant Kress's expression is unknown, when taken in a light most favorable to Plaintiff, such an allegation may suggest that the OAG permitted conditions so unpleasant or difficult that a reasonable person would have felt compelled to resign. However, Plaintiff has failed to name OAG as a Defendant in the case before the Court and therefore has failed to state a claim upon which relief could be granted. Accordingly, Defendants motion to dismiss will be granted with respect to this claim. However, the Court will grant Plaintiff leave to amend her complaint to provide sufficient allegations supporting her claim of constructive discharge in accordance with Rule 8(a)(2) of the Federal Rules of Civil Procedure.

## IV. CONCLUSION

Based on the foregoing, the Court concludes that Defendants' motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure will be granted and Plaintiff will be granted leave of court to amend her complaint within twenty (20) days of the date of this Order.

## V. ORDER

**AND NOW**, on this 16th day of September, 2005, upon consideration of the foregoing, **IT IS HEREBY ORDERED THAT** Defendants' motion to dismiss (Doc. No. 6) is **GRANTED** as follows:

1. Plaintiff's common-law claim for intentional infliction of emotional distress is **DISMISSED** with prejudice as untimely.

2. Plaintiff's First Amendment claim of retaliation brought pursuant to 42 U.S.C. § 1983 is **DISMISSED** for failure to adequately state a claim. Plaintiff is granted leave to amend her complaint with respect to this claim within twenty (20) days of the date of this Order.

3. Plaintiff's common-law claim of constructive discharge is **DISMISSED** for failure to adequately state a claim. Plaintiff is granted leave to amend her complaint with respect to this claim within twenty (20) days of the date of this Order.

Any failure to amend the complaint in accordance with this Order will result in this action being dismissed without further notice.

S/ Yvette Kane
Yvette Kane
United States District Judge