# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KAREN EVANCHO, | : | |
| | : | |
| Plaintiff | : | Civil Action No. 1:05-CV-117 |
| | : | |
| v. | : | (Judge Kane) |
| | : | |
| DAVID KWAIT, | : | |
| JAMES CAGGIANO, | : | |
| LETTY KRESS, | : | |
| and MARK SERGE, | : | |
| | : | |
| Defendants | : | |

## MEMORANDUM

**I.     Introduction**

Before the Court is Defendants' Motion to Dismiss the Amended Complaint.  (Doc. No. 20.)  Defendants contend that the Amended Complaint should be dismissed for lack of jurisdiction and for failure to state a claim upon which relief can be granted.  (Id.)  Plaintiff filed a timely brief in opposition on November 16, 2005.  (Doc. No. 24.)  Because the Court finds that Plaintiff failed to allege actionable conduct falling within the two-year statute of limitations period applicable to this case, Defendants' motion will be granted and the case will be dismissed.

**II.     Discussion**

This is the second time the Court has considered a motion by the Defendants to dismiss this action.  In the Court's prior Order granting Defendants' first motion to dismiss, the Court allowed Plaintiff twenty days to amend the Complaint to cure various deficiencies, principally to provide further allegations regarding personal involvement of each of the Defendants within the applicable two-year statute of limitations period.  (Doc. No. 18.)  Specifically, although Plaintiff

made certain allegations regarding intentional tortious conduct on the part of the Defendants that allegedly resulted in First Amendment violations and Plaintiff's constructive discharge from her employment with the Pennsylvania Office of the Attorney General ("OAG"), the Complaint lacked any allegation of Defendants' conduct that fell within the two-year statute of limitations period applicable to all of Plaintiff's related claims.  As noted in the Court's previous Order, Plaintiff commenced this litigation on January 17, 2005 – exactly two years after she officially terminated her employment with the OAG.  Prior to leaving the OAG, Plaintiff had been out of work on medical leave since September 17, 2000.  Although the Court acknowledged that Plaintiff's claims could theoretically fall within the two-year statute of limitations period applicable to all of Plaintiff's claims, the Court also underscored that such claims could be considered timely only if Plaintiff could demonstrate that some or all of the Defendants actually did something to contribute to Plaintiff's alleged constructive discharge <u>within</u> the limitations period.  Because Plaintiff failed to include such an allegation, the Court granted the motion to dismiss, but also afforded Plaintiff leave to amend the Complaint to cure the pleading deficiencies identified.

On October 18, 2005, Plaintiff filed an Amended Complaint.  (Doc. No. 19.)  Despite the Court's specific discussion regarding the deficiencies in the original Complaint, Plaintiff offered essentially no new substance or detail.  Only in one paragraph does Plaintiff attempt to offer any specificity regarding conduct of the Defendants occurring on or after January 17, 2003: "the continuous unabated threat to reinsert her in [the] hostile retaliatory environment constituted a continuous violation of her federally guaranteed rights under the First Amendment from 1998 through January 17, 2003 culminating in the constructive discharge complained of herein."

(Am. Compl. ¶ 27.)[1]  This limited and conclusory addition is, essentially, nothing more than a rhetorical restatement of Plaintiff's general allegation running throughout the Complaint:  that she was subjected to workplace retaliation beginning in 1998 after she spoke out on matters of public concern, and such retaliation eventually led to her ultimate departure from the OAG in January 2003.  Plaintiff hints that Defendants continued to maintain the threat of harassment or retaliation up until January 17, 2003, yet the Amended Complaint provides no allegations to this effect.  Plaintiff vaguely references a "continuous unabated threat" but provides no factual allegations regarding actual conduct of the Defendants.  The Court finds Plaintiff has failed to allege facts – other than her decision not to return to her employment with the OAG nearly two and one-half years after she went out on medical leave – that support her claim that the Defendants individually or collectively caused her constructive discharge by their allegedly retaliatory conduct towards her while she was working in the OAG.

Plaintiff's failure to provide any detail regarding alleged conduct that fell within the limitations period appears to be a tacit acknowledgment that no such conduct actually occurred on January 17, 2003.  This possibility is amplified by Plaintiff's new suggestion that she is claiming Defendants' conduct represents continuing violations sufficient to overcome the manifest statute of limitations problem presented: "Plaintiff alleges that the constructive

---

[1] The remaining amendments to the original Complaint are irrelevant to the noted deficiencies.  Plaintiff added a brief discussion regarding the procedural posture of the case and some limited argument regarding the continuing violations doctrine.  Additionally, Plaintiff noted that she was dropping three individual Defendants from the action and renumbered certain paragraphs, while leaving their content unchanged.  The only material amendment to the original Complaint is found in Paragraph 27, which appears to be an attempt to provide a specific allegation regarding the conduct of some or all of the Defendants occurring within the limitations period or, alternatively, to provide backing to Plaintiff's contention that the continuing violations doctrine should operate as an exception to the statute of limitations.

discharge she suffered was the culmination of a series of continuing violations that led to and caused the constructive discharge of [January 17, 2003]." (Am. Compl. ¶ 1.) After a careful reading of the Amended Complaint, the Court finds that Plaintiff has failed to demonstrate that the continued violations doctrine applies to this case.

"The continuing violations doctrine is an 'equitable exception to the timely filing requirement.'" Cowell v. Palmer Township, 263 F.3d 286, 292 (3d Cir. 2001) (quoting West v. Philadelphia Elec. Co., 45 F.3d 744, 754 (3d Cir. 1995)). The doctrine is most frequently applied in the Title VII context, but has been applied in other contexts as well, including claims brought under 42 U.S.C. § 1983. Cowell, 263 F.3d at 292. To proceed under the doctrine, a plaintiff must establish both: (1) that "the last act evidencing the continuing practice falls within the limitations period"; and (2) that "the defendant's conduct is more than the occurrence of isolated or sporadic acts." Id. "The focus of the continuing violations doctrine is on affirmative acts of the defendants." Id. at 293.

Because the Amended Complaint is predicated entirely on Plaintiff's allegation that Defendants retaliated against Plaintiff for speaking out on matters of public concern (thereby leading to her alleged constructive discharge), Plaintiff's initial burden is to allege some retaliatory act that falls within the limitations period. As noted, the only act alleged to have occurred on January 17, 2003 – the only day falling within the limitations period in this case – is the fact that on that day, Plaintiff formally ended her employment with the OAG.[2] Plaintiff has offered no real allegation of any act of any Defendant that is claimed to have occurred on this

---

[2] Plaintiff had not actually worked for the OAG since September 2000, and never returned to work before her formal separation from the OAG on January 17, 2003.

date, and the Court finds that the generalized allegation appearing in Paragraph 27 of the Amended Complaint does not satisfy Cowell's requirement that Plaintiff identify the last act evidencing the alleged continuing tortious conduct within the limitations period.  Again, the focus of the continuing violations doctrine is on affirmative acts of the Defendants, and Plaintiff has not pointed to an affirmative act of any Defendant falling on January 17, 2003.[3]

Even were the Court to find that Plaintiff's formal departure from the OAG satisfied the first requirement, application of the continuing violations doctrine would be inappropriate because plaintiff has not adequately alleged that the Defendants' conduct was "more than the occurrence of isolated or sporadic acts of intentional discrimination." West, 45 F.3d at 755. Regarding this inquiry, the Third Circuit has instructed courts to consider at least three factors. Of primary importance is the "degree of permanence," Cowell, 263 F.3d at 292, i.e., "whether the nature of the violations should trigger the employee's awareness of the need to assert her rights and whether the consequences of the act would continue even in the absence of a continuing intent to discriminate." West, 45 F.3d at 755 n.9.  Courts should also consider "subject matter – whether the violations constitute the same type of discrimination, tending to connect them in a continuing violation" and "frequency-whether the acts are recurring or more in the nature of isolated incidents." Cowell, 263 F.3d at 292.

In this case, Plaintiff has failed to allege, with even a minimum of specificity, that the Defendants' alleged conduct had such a degree of permanence as to implicate the continuing violations doctrine.  Indeed, aside from the vague representation contained in Paragraph 27 that

---

[3] Even reading the Amended Complaint liberally, the Court does not find allegations that any Defendant engaged in retaliatory or other unlawful conduct after September 2000, when Plaintiff took medical leave.

"Defendants'" conduct represented a "continuous unabated threat" that Plaintiff perceived, the Amended Complaint is silent as to specific, continuous acts of Defendants occurring after September 17, 2000. Plaintiff claims that she was "driven from her employment on September 17, 2000" – allegedly as the result of depression and emotional trauma inflicted through Defendants' "course and pattern of misconduct designed to intimidate, harass, and demean the plaintiff." (Am. Compl. ¶ 1.) Although the Amended Complaint contains no references to specific dates upon which Defendants are alleged to have engaged in retaliation and harassment, Plaintiff contends that at some unspecified time in 1998, she was subjected to ridicule by her "colleagues" and that this conduct was "encouraged and allowed by her superiors." (Id. ¶ 22.) At this point, the Amended Complaint resorts to generality and vague rhetoric that offers no clear allegations of conduct, much less conduct that could be deemed pervasive and continuing: "Plaintiff was nicknamed 'the office rat' while her integrity and skills were set aside by the aforementioned defendants in a gang mentality display of adolescent commitment to a thin blue line sort of loyalty." (Id.)

The Amended Complaint proceeds to allege that two of the named Defendants caused Plaintiff to be transferred to a new position with less responsibility, apparently at some time in 1998, although the Amended Complaint does not provide any specificity on this point. (Id. ¶¶ 24-25.) Plaintiff claims that during and after 1998, Defendants Serge, Caggiano, and Kwait caused her to be harassed by requiring that she "report tedious and unnecessary functions and activities as a way to intimidate and ostracize plaintiff." (Id. ¶ 26.) Plaintiff claims that this alleged harassment continued until September 17, 2000, when she took medical leave. (Id.) As noted, Plaintiff never returned to the OAG in any capacity and formally terminated her

employment on January 17, 2003 after she had exhausted her available sick leave, vacation, and personal days.  (Id. ¶ 38.)  The Amended Complaint is silent regarding any conduct of Defendants after September 17, 2000.

Even assuming as true that some or all of the Defendants consistently engaged in retaliatory or harassing conduct between 1998 and September 2000, the Court can find only that Plaintiff has failed to allege any conduct on the part of Defendants for nearly two and one-half years prior to her departure from the OAG, and more than four years prior to the commencement of this action.  The total absence of any alleged conduct during this time period can only lead the Court to find that Plaintiff has failed to allege sufficiently that Defendants' claimed conduct was so pervasive as to implicate the continuing violations doctrine.[4]

In closing, the Court finds it appropriate to note that Plaintiff was unquestionably aware of Defendants' alleged actions long before she commenced this litigation.  This is clear from the fact that in September 2002 she brought suit against the Pennsylvania Attorney General in the United States District Court for the Western District of Pennsylvania, captioned as Evancho v. Fisher, et al., No. 02-CV-1799 (W.D. Pa.).  That action was subsequently dismissed, and the dismissal was affirmed by the United States Court of Appeals for the Third Circuit.  See Evancho v. Fisher, 423 F.3d 347 (3d Cir. 2005).  Although the instant action concerns different defendants, and contains a new allegation regarding constructive discharge, it appears that both cases are predicated on substantially similar facts.  Plaintiff was obviously aware of Defendants'

---

[4] It must be emphasized that the Court has also found that Plaintiff failed to allege any act of the Defendants occurring within the two-year limitations period.  This failure alone is sufficient to find that the continuing violations doctrine has no application to this case and does not save the action from being dismissed as untimely.

allegedly actionable conduct at the latest by September 17, 2000, which is the date she claims she was forced to take medical leave.  Nevertheless, it was not until roughly four and one-half years later that she brought suit.  Although the Court contemplates that Plaintiff may have been able to preserve an action for constructive discharge through the allegations of new facts falling within the limitations period, the Court cannot find that Plaintiff is entitled to the benefit of the continuing violations doctrine to preserve a constructive discharge claim where she can point to no new facts other than the formal end to her employment with the OAG two and one-half years after she took medical leave.

### III.    Conclusion

In this case, Plaintiff has predicated all of her federal and state claims – all of which are subject to a two-year limitations period – upon the fact that her ultimate departure from the OAG occurred two years to the day prior to commencing this action.  Without allegations of conduct falling within this limitations period, the Court finds that the continuing violations doctrine has no application to this case, and the action must be dismissed in its entirety.  Plaintiff has already been granted leave to amend the pleading deficiency in the original Complaint, with specific instructions to include allegations of Defendants' actions that occurred within the limitations period.  She has failed to comply with this instruction, and the Court finds it would be improper to grant further leave to amend.  Accordingly, Defendants' motion to dismiss will be granted. An appropriate Order follows.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **KAREN EVANCHO,** | : | |
| | : | |
| Plaintiff | : | Civil Action No. 1:05-CV-117 |
| | : | |
| v. | : | (Judge Kane) |
| | : | |
| **DAVID KWAIT,** | : | |
| **JAMES CAGGIANO,** | : | |
| **LETTY KRESS,** | : | |
| and **MARK SERGE,** | : | |
| | : | |
| Defendants | : | |

**ORDER**

And now, this 8th day of February 2006, for the reasons set forth in the within memorandum, **IT IS HEREBY ORDERED THAT** Defendants' Motion to Dismiss (Doc. No. 20) is **GRANTED** and this action is **DISMISSED** in its entirety. The Clerk of Court is directed to close the file.

                     S/ Yvette Kane
                     Yvette Kane
                     United States District Judge